T.C. Memo. 2007-325

UNITED STATES TAX COURT


CARL KLEIN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 7162-06L, 7163-06L.    Filed October 30, 2007.


<u>Robert E. McKenzie</u> and <u>Kathleen M. Lach</u>, for petitioner.

<u>Gregory J. Stull</u> and <u>Gorica B. Djuraskovic</u>, for respondent.


MEMORANDUM OPINION

JACOBS, <u>Judge</u>:[1]  The petitions in these consolidated cases were each filed in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330

_____

[1]These cases were assigned to Judge Julian I. Jacobs for disposition by order of the Chief Judge on August 20, 2007.

(notice of determination).[2]  Pursuant to section 6330(d), petitioner seeks our review of respondent's determination upholding the proposed use of a levy to collect petitioner's income tax liabilities for tax years 1997, 1998, 1999, and 2000. The issue for decision is whether respondent's proposed levy actions may proceed.

## Background

These consolidated cases were submitted fully stipulated pursuant to Rule 122.  The case at docket No. 7163-06L pertains to tax years 1997 and 1998.  The case at docket No. 7162-06L pertains to tax years 1999 and 2000.  The stipulations of fact and the attached exhibits are incorporated herein by this reference.  At the time he filed the petitions, petitioner resided in Chicago, Illinois.

Petitioner, who was born in 1946, is an attorney who practiced law with various Chicago law firms at different times during the years at issue.  Petitioner filed income tax returns for the years at issue as follows:

| Year | Date Return Due (After Extensions) | Date Return Filed | Adjusted Gross Income per Return | Income Tax per Return | Self-Employment Tax per Return |
|------|------|------|------|------|------|
| 1997 | Oct. 15, 1998 | July 25, 2001 | $163,286 | $25,692 | $15,431 |
| 1998 | Oct. 15, 1999 | Aug. 15, 2001 | 213,864 | 40,918 | 16,684 |

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

| 1999 | Aug. 15, 2000 | Apr. 15, 2003 | 102,994 | 47,963 | 19,208 |
| 2000 | Aug. 15, 2001 | Aug. 28, 2002 | 151,475 | 28,949 | 17,792 |

Respondent assessed the tax for each year and demanded payment for the unpaid balances.[3]  When petitioner failed to pay the balances, respondent determined that enforced collection action would be required.  On November 12, 2003, respondent mailed petitioner a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing for 1997 and 1998, and a separate such notice for 1999 and 2000.[4]  According to respondent's notices of levy, petitioner's total unpaid tax liability, including additions to tax and interest, exceeded $200,000.[5]  In response to each notice of levy, petitioner, by means of a Form 12153, Request For a Collection Due Process Hearing, timely requested a hearing under section 6330.  In his requests for a hearing, petitioner claimed:  (1) He was entitled to abatement of the "penalties"[6] assessed against him because he

---

[3]Respondent assessed $1,337 of additional tax for 1997 in May of 2003 and $1,927 of additional tax for 2000 in December of 2003.  By the time he filed the petitions, petitioner had paid approximately $30,700 of his tax liability for the 4 years in issue.

[4]On or about Nov. 14, 2003, a Federal tax lien was obtained on petitioner's property with respect to all tax years at issue. Petitioner does not contest the propriety of the tax lien filing.

[5]The income tax assessments include additions to tax under sec. 6651(a)(1) and (2) for all tax years at issue and under sec. 6654 for 1997, 1998, and 1999.

[6]References to penalties in various places in the record
(continued...)

had reasonable cause for his failure to pay the taxes; (2) the Internal Revenue Service (IRS) should have accepted his offer-in-compromise based on doubt as to collectibility because of the possibility of discharge of his taxes in the event he filed for bankruptcy; and (3) alternatively, in the event his offer-in-compromise was not accepted, the IRS should have allowed him to pay his tax liability in installments.

Petitioner's section 6330 hearing was conducted by means of a face-to-face meeting, correspondence, and telephone conversations with a settlement officer in respondent's Appeals Office (the settlement officer). On November 2, 2004, the IRS received petitioner's offer to compromise his total tax liability for 1997, 1998, 1999, 2000, and 2001 for $70,000.[7] On December 8, 2005, following petitioner's submission of additional information in response to requests by respondent, the settlement officer advised petitioner that petitioner was ineligible for an offer-in-compromise because petitioner had the ability to fully pay his income tax liability over 48 months. On December 22, 2005, the settlement officer wrote a letter to petitioner explaining, among other things: (1) That petitioner had not as yet provided any

---

[6](...continued)
actually are to additions to tax under sec. 6651(a)(1) and (2) and sec. 6654. References in this opinion to additions to tax relate to one or more, as appropriate. Petitioner does not seek abatement of interest.

[7]Tax year 2001 is not at issue herein.

verification of reasonable cause for abatement of additions to tax and that respondent would assume that there was none unless such was provided within the next 15 days; (2) that consideration of petitioner's bankruptcy assertion must be made in the light of the new bankruptcy laws which take "a harder look at future income than the old law did".  The settlement officer noted that "You have significant income potential, as you have displayed through past performance, and I do not think that you would avoid paying all the taxes if you file [for bankruptcy]"; and (3) that if petitioner wished to enter into an installment agreement, he should, through his representatives, contact respondent within 15 days.

Petitioner responded to the settlement officer's December 22, 2005, letter by reiterating his position that respondent had not given adequate consideration to his potential bankruptcy because respondent had not considered that his future earnings were uncertain because petitioner was aging and was at that time practicing law without associates and without a formal office or support staff.  In addition, petitioner contested the settlement officer's calculation of petitioner's realizable collection potential, claiming that increased allowances should have been made for petitioner's basic living expenses.  Petitioner did not attempt to enter into an installment agreement and did not respond to the invitation to submit verification of reasonable

cause for abatement of the additions to tax. The settlement officer ultimately recommended rejection of petitioner's offer-in-compromise, and on March 15, 2006, respondent's Appeals Office issued notices of determination sustaining the levy actions for the tax years in issue.

Petitioner timely filed his petitions, in which he seeks review of respondent's determinations. Petitioner contends that respondent acted impermissibly: (1) In denying petitioner's requests for abatement of additions to tax, (2) in rejecting petitioner's offer-in-compromise, and (3) in sustaining the proposed levy actions.

### Discussion

The parties are not at odds regarding the technical provisions of section 6330. Further, petitioner does not claim that respondent failed to satisfy any of the mechanical or procedural obligations contemplated by that statute. Nor does petitioner contest the propriety of the assessments of tax as a procedural matter. Consequently, we immediately turn our attention to petitioner's complaints and begin with his first contention that respondent acted impermissibly in denying petitioner's requests for abatement of additions to tax due to reasonable cause. We construe petitioner's position in this regard to be that he should not be held liable for the additions to tax.

Section 6330(c)(2)(B) provides that a person may challenge "the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." Petitioner did not receive a notice of deficiency for 1998 or for 1999 or otherwise have an opportunity to dispute those additions. Therefore, petitioner is entitled to challenge the existence or amount of the tax liabilities with respect to those returns, which he did in his section 6330 hearing. See Montgomery v. Commissioner, 122 T.C. 1 (2004). We review de novo respondent's determinations with respect to 1998 and 1999. See Davis v. Commissioner, 115 T.C. 35, 39 (2000); Goza v. Commissioner, 114 T.C. 176, 181 (2000).

The record is not entirely clear as to whether petitioner received a statutory notice of deficiency for 1997 or for 2000, and if he did, the extent to which additions to tax were determined therein. Assuming they are subject to review, and regardless of which standard we use to review respondent's determinations (de novo or for an abuse of discretion), we find no basis on which to relieve petitioner from liability for any of the additions to tax.

The Commissioner bears the burden of production regarding the additions to tax. Sec. 7491(c); Higbee v. Commissioner, 116 T.C.

438 (2001). In order to meet this burden, the Commissioner must produce sufficient evidence indicating that it is appropriate to impose an addition to tax. Higbee v. Commissioner, supra at 446. Once the Commissioner has met this burden, the taxpayer must come forward with evidence sufficient to persuade the Court that the Commissioner's determination is incorrect or an exception applies. Id. at 447.

As relevant here, in general, section 6651(a)(1) provides for an addition to tax that can amount to 25 percent of the tax (net amount) required to be shown on the return if the return is filed more than 4 months after the due date of the return, including extensions.[8] See sec. 6651(b). Section 6651(a)(2), in general, provides for an addition to tax that can amount to 25 percent of the unpaid portion of the tax shown on a return if the unpaid portion remains unpaid for more than 49 months after the tax is due to be paid. A taxpayer can be absolved of liability from the aforementioned additions to tax if the taxpayer demonstrates that the failure to file, or the failure to pay, as appropriate, is due to reasonable cause and not due to willful neglect. Sec. 6651(a); Higbee v. Commissioner, supra.

Reasonable cause for the failure to file a return may be shown where the taxpayer has made a satisfactory showing that he

---

[8]Where the sec. 6651(a)(2) addition also applies, the sec. 6651(a)(2) addition is reduced as provided in sec. 6651(c)(1).

exercised ordinary business care and prudence but nevertheless was unable to file the return within the prescribed time. Reasonable cause for the failure to pay the tax may be shown where the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship if he paid on the due date. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Petitioner does not dispute that he filed his returns late and that the taxes shown on the returns remained unpaid as reflected in respondent's records. Petitioner contends that his failure to file returns timely and timely pay taxes was due to personal circumstances during the years at issue and that these circumstances constituted reasonable cause for purposes of section 6651(a). Specifically, petitioner claims that his

> marriage was ending, the firms he was associated with were collapsing around him, or not following through on promised remuneration, and he was in the midst of a significantly over-budget rehabilitation project on a dream home that almost immediately upon completion he was forced to sell due to the divorce. This occurred all while trying to assure his family's needs were met.

The record shows that petitioner requested extensions of time to file in each of the tax years at issue. Thus, there is

no doubt but that petitioner knew of his obligation to file returns and knew the dates on which they were due. Moreover, he knew that he had an unpaid tax liability.

In spite of the personal adversity he encountered, petitioner succeeded in generating substantial income for the years at issue and apparently chose to spend this income to maintain an elevated lifestyle and to "assure his family needs were met"[9] as opposed to paying his taxes. Petitioner is an attorney and obviously knew he had an obligation to obey the tax laws, including the obligation to file timely returns and pay the taxes when due. The obstacles petitioner describes simply do not rise to a level amounting to reasonable cause. After reviewing the record and applying the de novo standard of review for all years at issue, we hold that petitioner is liable for the additions to tax under section 6651(a)(1) and (2) for all of the years at issue.

Section 6654(a) imposes an addition to tax for failure to pay estimated income tax where prepayments of such tax, either through withholding or by making estimated quarterly tax payments

[9]In response to a question on Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, requesting a list of "the dependents you can claim on your tax return", petitioner listed his son aged 24 and his daughter aged 22, neither of whom lived with him. Petitioner signed and dated the Form 433-A on Oct. 25, 2004. In petitioner's 2003 tax return, dated Oct. 14, 2004, neither child (or anyone else) had been claimed as a dependent.

during the course of the year, do not equal the percentage of total liability required under the statute. The amount required to be paid through each such estimated quarterly payment is 25 percent of the required annual payment. Sec. 6654(d)(1)(A). The required annual payment is, in turn, the lesser of 90 percent of the tax shown on the return for that taxable year or 100 percent of the tax shown on the return for the preceding taxable year (or a greater percent for individuals with adjusted gross income exceeding $150,000). Sec. 6654(d)(1)(B) and (C). There is no broadly applicable reasonable cause exception to the section 6654 addition to tax.

The record shows that petitioner did not make sufficient estimated tax payments for 1997, 1998, or 1999, the years for which respondent seeks to impose the section 6654 addition. None of the statutory exceptions to imposition of the addition applies. We conclude that respondent has met his burden of production under section 7491(c) regarding petitioner's liability for the additions to tax under section 6654 and that petitioner is liable for those additions.[10]

---

[10]The parties stipulated that "petitioner filed an income tax return for 1996, reporting tax liability in the amount of $29,980." In addition, for 1996, petitioner reported self-employment tax of $15,430.

Petitioner's second contention is that respondent abused his discretion in rejecting petitioner's offer-in-compromise on the basis of doubt as to its collectibility.

Section 7122(a) authorizes the Secretary to compromise any civil case arising under the internal revenue laws and requires him to prescribe guidelines for officers and employees of the IRS to determine whether an offer-in-compromise is adequate and should be accepted to resolve a dispute.  Sec. 7122(a), (c)(1).

The contemplated guidelines and schedules pertaining to evaluating offers-in-compromise on the basis of collectibility have been published in the regulations interpreting section 7122.  See sec. 301.7122-1(c)(2), Proced. & Admin. Regs.; 1 Administration, Internal Revenue Manual (CCH), sec. 5.8.4.4 at 16,306.  Under this administrative guidance, the Secretary will generally compromise a liability on the basis of doubt as to collectibility only if the liability exceeds the taxpayer's reasonable collection potential.  Cf. Murphy v. Commissioner, 125 T.C. 301, 308-310 (2005), affd. 469 F.3d 27 (1st Cir. 2006).  A taxpayer's reasonable collection potential is determined, in part, using the published guidelines for certain national and local allowances for basic living expenses and essentially treating income and assets in excess of those needed for basic living expenses as available to satisfy Federal income tax liabilities.  See 2 Administration, Internal Revenue Manual

(CCH), exh. 5.15.1-3 at 17,668, exh. 5.15.1-8 at 17,686, exh. 5.15.1-9 at 17,742. Application of the standard allowances for housing and utility expenses (rather than the taxpayer's actual expenses) is not an abuse of discretion where use of the standard allowances does not result in the taxpayer's not having adequate means to provide for basic living expenses. See McDonough v. Commissioner, T.C. Memo. 2006-234.

The foregoing formulaic approach is disregarded, however, upon a showing by the taxpayer of special circumstances that may cause an offer to be accepted notwithstanding that it is for less than the taxpayer's reasonable collection potential (e.g., the taxpayer is incapable of earning a living because of a long-term illness, and it is reasonably foreseeable that the taxpayer's financial resources will be exhausted providing for care and support during the course of the condition). Sec. 301.7122-1(b)(3), (c)(3), Proced. & Admin. Regs.; 1 Administration, Internal Revenue Manual (CCH), sec. 5.8.11.2.1 at 16,375, sec. 5.8.11.2.2 at 16,377. Petitioner does not allege, and it does not appear, that any such special circumstances are present.

According to petitioner, respondent did not properly apply the published guidelines because he failed to make an allowance for petitioner's basic living expenses which were greater than that indicated in the published guidelines. Petitioner contends that a greater amount should have been allowed to reflect the

cost of his living in the downtown Chicago area because of his need to entertain clients in his home.  Further, petitioner claims that respondent failed to evaluate petitioner's option to file for bankruptcy and the potential discharge of some of the taxes that respondent seeks to collect by levy.

Respondent, in applying the published guidelines, allowed petitioner $2,474 per month for basic living expenses, which petitioner agrees was substantially the same as the amount provided for under the published guidelines.[11]  When subtracted from the $22,000 gross monthly income that petitioner disclosed in his offer-in-compromise, and in the light of respondent's records which showed that petitioner had $302,400 in wages and $13,400 in nonemployee compensation for tax year 2004,[12] respondent concluded that petitioner would be able to pay his by-then $252,462 tax liability in full over 48 months.

We agree with respondent that petitioner had sufficient income to meet his basic living expenses as well as to pay his tax liability in full.  Petitioner basically wants the Government

---

[11]Respondent allowed $194 per month for transportation; it appears that the published guidelines allow $329, or a similar amount, for ownership of one car in Chicago.  Petitioner contends that he should be allowed "the actual expense for his car loan ($870 per month)" instead.

[12]The record shows that respondent did not consider the value of dissipated assets in evaluating petitioner's offer-in-compromise, although respondent was concerned that such consideration might have been warranted.  See 1 Administration, Internal Revenue Manual (CCH), sec. 5.8.5.4. at 16,339-6.

to permit him to use his current and expected future earnings to maintain a lifestyle more lavish than the standard for the Chicago area (petitioner's living expenses are more than twice those of the average national and local standards) plus $4,000 per month for "business expenses" without having to fully satisfy his past due tax obligations.  The record does not disclose any special circumstances that warrant acceptance of petitioner's offer-in-compromise ($70,000 to extinguish a tax liability over $200,000).

As for the impact that petitioner's bankruptcy might have had on respondent's considerations, respondent contends that he applied the provisions of the Internal Revenue Manual, which advises:

> When a taxpayer threatens bankruptcy, the impact of bankruptcy on the Service's ability to collect must be considered.  If the Offer Investigator believes, based upon factual information, that the taxpayer is seriously considering filing bankruptcy, the employee should discuss the benefits of filing an administrative offer instead. [1 Administration, Internal Revenue Manual (CCH), sec. 5.8.10.2.2(1), at 16,367.]

The record shows that respondent considered the possibility that petitioner might file a petition in bankruptcy. Respondent's correspondence to petitioner is specific in explaining that petitioner had the ability to pay his total tax liability in full and "in light of the recently passed bankruptcy law which takes more into consideration an individual's income production", respondent did not believe that petitioner would be

able to avoid paying the total tax liability by filing for bankruptcy.  In other words, respondent believed that the impact of petitioner's filing for bankruptcy on respondent's ability to collect petitioner's unpaid tax would be minimal.  We are not prepared to find that respondent's rejection of petitioner's offer-in-compromise was arbitrary, capricious, or without sound basis in fact or law.

On the basis of this record, we conclude that petitioner is liable for the additions to tax as determined by respondent for all years at issue and that respondent did not abuse his discretion in rejecting petitioner's offer-in-compromise. Respondent's determination that the Federal tax levies were appropriate in these cases is sustained.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>for respondent</u>.